UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>)<br>FRANKLIN ROBERT HILL, )<br>)<br>Defendant. ) | Criminal No.  05-10111-RBC |

**GOVERNMENT'S OPPOSITION
TO DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE**

The United States hereby opposes Defendant Franklin Robert Hill's Motion for a Downward Departure.  Although the defendant proffers three grounds for departure, he fails to specify facts supporting his arguments.  Accordingly, the government responds generally to each argument, and requests an opportunity at the sentencing hearing to supplement its response if necessary.

    A.    <u>A Departure On the Ground that the Offense Conduct Involved Negligence is Unwarranted.</u>

The defendant contends that he is entitled to a departure because the offense of conviction involved negligent, as opposed to knowing, conduct.  He relies on Application Note 3 to U.S.C.G. §2Q1.3, which states that a downward departure "may be warranted" in cases involving negligence.  Such discretionary language makes plain that a conviction on a negligence-based offense does not automatically trigger the departure, and that the court's analysis ought to account for the surrounding circumstances of the offense, including the degree of negligence.

The only published opinion that might guide this analysis comes from the Ninth Circuit. In <u>United States v. Hanousek</u>, 176 F.3d 1116 (9th Cir. 1999), the defendant was a supervisor on a

work site on an Alaskan railroad, which ran parallel to, and just feet from, a heating oil pipeline. Id. at 1120. The defendant's crew had protected the pipeline near the site with railroad ties and sand. Id. One of the defendant's underlings, without the defendant's knowledge, used a back hoe to remove boulders from the track near an unprotected area of the pipeline. Id. As he was sweeping the rocks away, he punctured a hole in the pipeline, and between 1,000 and 5,000 gallons of heating oil spilled into a nearby river. Id. Although the defendant was negligent insofar as he did not take the appropriate precautions to prevent the spill (as opposed to being directly negligent like the backhoe driver), the court denied the defendant's motion to depart based on Application Note 3. Id. at 1125. With a total offense level of 12 and a Criminal History Category of I, the defendant was sentenced to six months incarceration, followed by six months in a halfway house. Id.

The decision not to depart by the district court in Hanousek is consistent with the guidelines. It is fair to say that there are various states of mind along a continuum between "knowing" and "negligence;" that may labeled, among other things, "carelessness" "gross negligence," "recklessness," and "wantonness." Whatever the label, it is evident that the Sentencing Commission, in making the departure under Application Note 3 discretionary, intended that courts ought to consider the degree of negligence involved in the conduct. Indeed, similar sentencing guidelines make more explicit that not all negligence is the same. For example, Application Note 1 to U.S.S.G. § 2A.1.1 (relating to homicide) states that a departure may be based upon "the defendant's state of mind (e.g., recklessness or negligence), the degree or risk inherent in the conduct, and the nature of the underlying offense conduct."

As further described in the Presentence Report, the defendant's conduct involved more

than simple negligence.  He was responsible for transporting an enormous volume of hazardous cargo through a sensitive coastal ecosystem – <u>a circumstance that demanded heightened vigilance</u>.  On the day of the spill, the tug and barge were functioning properly, the weather was ideal, and the channel was clearly marked.  Vessels of all sizes routinely traverse the channel at night and in foul weather without incident.  The defendant himself had all the requisite licenses and certifications to do his job.  Nevertheless, the defendant failed to exercise a modicum of common sense, much less employ the knowledge of the trained mariner that he was, in navigating the *Evening Tide* through Buzzards Bay on April 27, 2003.  He left the pilot house for an inordinate amount of time; he neglected to post a look out; he missed warning calls because he left his radio behind in the pilot house; he failed to summons the captain; and, above all, he lost entirely his awareness of the vessel's heading.  What caused the spill was not an otherwise innocuous mistake, but rather a series of compounding, readily avoidable failures in judgment that led to a foreseeable outcome.  Call it "careless," "grossly negligent," "reckless" or something else, the defendant's conduct was not merely negligent.  For this reason, a departure is entirely inappropriate.

      B.     <u>The Defendant's Conduct Was Not "Aberrant".</u>

The guidelines provide that the court may depart downward in an "exceptional" case where the defendant's conduct represented a single act of aberrant behavior.  <u>See</u> U.S.S.G. § 5K2.20.  The defendant contends that he is entitled to such a departure on the ground that he "is a man of unquestionable character and a hardworking law-abiding citizen with an excellent record as a licensed seaman."  <u>See</u> Def. Mot. at 3.  The evidence in this matter, however, indicates that the conduct that caused the Buzzards Bay spill was hardly an isolated incident.

If this matter had gone to trial, the government would have offered testimony by the defendant's fellow crew members that he acted with gross negligence, if not recklessness, on several occasions in the weeks and days before the spill. Specifically, they would testify about conduct that put property and crew at grave risk:

- The defendant was at the helm of a Bouchard tug on March 13, 2003, when, acting negligently, he slammed the vessel into a dock in Philadelphia, damaging the dock;

- Two days before the Buzzards Bay spill, the defendant was at the helm of the *Evening Tide* when, navigating the vessel negligently, nearly collided with a rock outcropping near Hell's Gate in New York; and

- The night before the spill, the defendant operated one of the vessel's two tow winches with such carelessness that the wire "bird nested" around its spool, rendering the towing system inoperable and causing approximately $15,000 in damage.

These incidents cannot be chalked up to a lack of skill or training. Like the actions leading up to the spill, they reflect failures to undertake appropriate care under the circumstances. His former captains would testify that they admonished the defendant about his carelessness, and that, nevertheless, he would disregard their input and continue to hold himself out as a seasoned mariner. Indeed, when they would ask about his "recency" in a given waterway, Hill was evasive and misled them to believe that he was familiar with the waterway, when he in fact was not.

The testimony of these individuals would belie any claim that the defendant's

recklessness in driving the *Evening Tide* out of the Buzzards Bay Channel was out of the ordinary. Accordingly, this is not an "exceptional" case in which the Court should depart from the applicable guideline range.

      C.      <u>The Collateral Consequences of the Defendant's Conduct Are Not Sufficiently Unusual to Warrant Departure.</u>

Without citing any authority, the defendant asserts that he is entitled to a downward departure on the grounds that he will have suffered substantial collateral consequences as a result of this case, namely the loss of his job and its effect on his family, as well the likelihood that the Coast Guard will revoke his mariner's license. The defendant offers no reason to believe that a departure on these grounds is appropriate.

For starters, the defendant effectively is arguing that his family circumstances are such that he is entitled to a departure (a departure ground that he did not reserve in the plea agreement). The Guidelines specifically discourage departures on this basis, <u>see</u> U.S.S.G. § 5H1.6, and the defendant offers the Court no facts that would support its taking the extraordinary step he seeks. Moreover, he offers no authority to support the proposition that suffering adverse legal consequences is a valid departure ground. <u>See</u> <u>e.g.</u> <u>United States v. Vasquez</u>, 279 F.3d 77, 79 (1st Cir. 2002) (holding that the fact that a defendant faces deportation is not a ground for departure). In short, the defendant has provided the Court no basis to believe that his case falls outside the "heartland" of the guidelines, and therefore, the Court should deny his motion.

WHEREFORE, the Court should deny the defendant's motion for downward departure.

        Respectfully submitted,

        MICHAEL J. SULLIVAN
        United States Attorney


By:   /s/ Jonathan F. Mitchell
        JONATHAN F. MITCHELL
        Assistant U.S. Attorney

        PETER KENYON
        Senior Criminal Enforcement Counsel
        Environmental Protection Agency